IN THE UNITED SATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

RECEIVED
USDC, CLERK, CHARLESTON, SC

2009 MAR 23 P 1: 54

| | |
|---|---|
| James D. Tinsley, II, #171943, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 8:08-CV-532-SB |
| ) | |
| James Singleton, Greg Reed, David ) | **ORDER** |
| Smith, Steve Pruitt, Phyllis Lombard, ) | |
| County of Oconee, Scott Arnold, Jerry ) | |
| Moss, Mark Lyles, Mike McGowan, and ) | |
| Gentry Hawk, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court upon the Plaintiff's *pro se* complaint, wherein he alleges violations of his constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.[1] The record contains a report and recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b)(1)(B). In the R&R, the Magistrate Judge recommends that the Court deny the Plaintiff's motion for summary judgment and grant the Defendants' motion for summary judgment. The Plaintiff filed timely objections to the R&R, and the matter is ripe for review. See 28 U.S.C. § 636(b)(1) (stating that a party may object, in writing, to an R&R within ten days after being served with a copy of that report).

## BACKGROUND

On July 31, 2008, the Plaintiff was convicted by a jury of two counts of possession of stolen property and one count of possession of a stolen vehicle. He currently is in the

---

[1] Because the Plaintiff is proceeding *pro se*, the Court holds his pleadings to a less stringent standard than those drafted by attorneys and accords them liberal construction. See Estelle v. Gamble, 429 U.S. 97 (1976), and Haines v. Kerner, 401 U.S. 519 (1972).

custody of the South Carolina Department of Corrections, but at the times relevant to this complaint, he was a pre-trial detainee incarcerated at the Oconee County Detention Center.

The Plaintiff filed this action on February 13, 2008, naming the following as Defendants: James Singleton, the Sheriff of the Oconee County Sheriff's Department; Greg Reed, a detective with the Sheriff's Department; David Smith, another detective in Oconee County; Phyllis Lombard, an Oconee County Administrator; Steve Pruitt, a Major at the Oconee County Detention Center; Judge B.A. Norton, an Oconee County magistrate judge; various John and Jane Does; and the County of Oconee.[2] After filing the initial complaint, the Plaintiff filed an amended complaint, a second amended complaint, and a third amended complaint. In his third amended complaint, the Plaintiff identified certain of the previously-named John Doe Defendants. Specifically, the Plaintiff added Jerry Moss, Mark Lyles, Mike McGowan, and Gentry Hawk (all of whom work for the Oconee County Sheriff's Department) as Defendants.

In his complaint, the Plaintiff alleges that the Defendants violated his Fourth Amendment rights by unreasonably searching and seizing his property without a warrant, exigent circumstances, due process, or his consent. He also alleges that the Defendants violated his constitutional right of access to the courts by failing to provide him with a law library or persons trained in the law while he was detained at the Oconee County Detention Center. He seeks various declaratory judgments regarding the Defendants' actions as well as $5,250,000.00 in compensatory damages and $5,250,000.00 in punitive damages. He

---

[2] In an Order filed March 20, 2008, the Court adopted the Magistrate Judge's R&R and dismissed the complaint as to Defendant Norton.

also seeks the return of his property and $50,000.00 for each additional day that the property is withheld from him.

According to his third amended complaint, the Plaintiff was invited to stay at a camper owned by Hogan Hugh Justice, III ("Justice") on December 11, 2007. At the time, the camper was connected to utilities and being used as a residence, and it was located on property owned by the Lost Dutchman's Mining Association ("LDMA") in Tamassee, South Carolina. The Plaintiff alleges that the LDMA property is fenced and posted as "Private Property Members Only"; the Plaintiff also alleges that he is a member of LDMA, but he claims that he did not have control over any property owned by Justice, including the camper, a backhoe, a trailer, two all-terrain vehicles ("ATVs"), and a Ford Ranger truck.

The Plaintiff alleges that on or about January 1, 2008, Justice asked him to try to sell some ATVs for him on eBay, and he agreed to list them in exchange for $50.00 plus eBay fees for each ATV sold. The Plaintiff admits that at some point in January, the Oconee County Sheriff's Department began investigating the theft of several ATVs that were being sold locally on eBay, and the Defendants suspected that the Plaintiff may have been involved and obtained a warrant for his arrest. On January 29, 2008, at 1:00 p.m., the Plaintiff, Justice, and Clyde Bowles ("Bowles") were driving down Highway 11 near Tamassee, South Carolina, when they were pulled over by Defendant Smith. As a result of the stop, the Plaintiff and Justice were arrested. According to the Plaintiff, Defendants Reed, Arnold, Moss, Lyles, McGowan, and Hawk arrived at the arrest site and participated in inventorying the Plaintiff's 1999 Ford Expedition. During questioning, the Plaintiff admitted that a computer, which was inside a briefcase in his car, belonged to him. The Defendants ultimately had the Plaintiff's car towed to an impound lot and took the Plaintiff



3

to the Oconee County Detention Center.

Next, the Plaintiff alleges that the Defendants questioned Bowles about his knowledge of the ATVs, and Bowles informed the Defendants that he had seen two ATVs at the LDMA property and that one was in the yard and the other was in an olive enclosed trailer. The Plaintiff alleges that the Defendants took his keys and went to the LDMA property to see if the ATVs were there and to determine if they were stolen. According to the Plaintiff, the Defendants, without a search warrant, moved one ATV into the yard so they could get under it and see the vehicle identification number on the bottom of the frame. The Plaintiff also alleges that the Defendants, without a search warrant, entered a locked trailer to locate the second ATV and that they entered an enclosed backhoe and a camper to determine whether they had been stolen.[3] According to the Plaintiff, Defendant Smith left the property in the hands of the other Defendants to go obtain a warrant to search and seize the property. The Plaintiff complains that the resulting warrant and affidavit were insufficient, and he complains that the warrant did not cover certain items that were searched and seized.

In contrast, according to the Defendants, the Irdell County Sheriff's Office contacted them in January of 2008 regarding stolen property believed to be in the Plaintiff's



---

[3] The Plaintiff believes that the officers conducted an unconstitutional pre-warrant search based on the fact that the time stamps on some of the pictures taken imply that the search occurred before the warrant was obtained. However, the Defendants assert that the automatic time stamp on the photos was incorrect and that the pictures themselves indicate that the search occurred at night and after the warrants were obtained.

The Plaintiff also asserts that the Defendants had to look under the four wheeler to find the identification number and determine whether it was stolen; however, the Defendants assert that they saw the four wheeler in plain view and that they already had probable cause to believe it was stolen based on their previous investigation. Finally, the Defendants attest that no search occurred before they obtained a warrant.

possession. Specifically, the Irdell County Sheriff's Office advised the Defendants that the Plaintiff had sold a stolen ATV on eBay. The man who purchased the stolen ATV from the Plaintiff had picked it up at a storage unit rented by the Plaintiff in Oconee County. Also, the Haywood County Sheriff's Office contacted the Defendants about several four-wheelers and a long, black, enclosed trailer that had been stolen in Haywood County.

According to the Defendants, on January 29, 2008, the owner of the storage building contacted them and advised them that the Plaintiff had been there. The owner also told the Defendants that the Plaintiff kept a long, black trailer at the site as well as several four-wheelers. The owner told the Defendants that the Plaintiff was last seen driving south on Highway 11. Thereafter, the Defendants located the Plaintiff on Highway 11 and pulled him over, resulting in the arrest of the Plaintiff and Justice. Then, a passenger in the car, Bowles, directed the officers to the campsite where the Plaintiff had been staying with Justice. According to the Defendants, they saw stolen ATVs and trailers in plain view at the campsite. Based on information obtained in their investigation, they obtained a search warrant for "any and all items of evidentiary value including [ ] Polaris Sportsman four wheelers, Superior trailers, and a[n] olive in color [e]nclosed trailer with a black fold-down door with side door with dual wheels, Deere backhoe tractor yellow in color, 8' black trailer, VRI camper white in color with two slide out[s] and two doors with [a]wning on it." The Defendants also obtained a second search warrant to look for "papers to show sale or buying of property, calendars, phone numbers, any paperwork showing bookkeeping and/or records of sale, tools, computer equipment, removable hardware used for computer storage space, any removable hard drives to include flash drives and external hard drives, the internal memory of the hard drive and any other computer sto[r]age space, including

5

external memory of the hard drive and any other computer storage space, including external hard drives and other memory storage space." The Defendants seized the property, and they assert that the search and seizure was lawful and done pursuant to valid warrants. The Defendants also maintain that the Plaintiff has not been denied meaningful access to the courts.

On June 23, 2008, the Plaintiff filed a motion for summary judgment, and on August 1, 2008, the Defendants filed a cross-motion for summary judgment. On January 15, 2009, the Magistrate Judge issued an R&R, recommending that the Court deny the Plaintiff's motion for summary judgment and grant the Defendants' motion for summary judgment. Specifically, the Magistrate Judge determined that the Plaintiff's Fourth Amendment Claim challenging the search and seizure of his property was barred by the United States Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). The Magistrate Judge also determined that the Plaintiff had not been denied meaningful access to the courts. On January 28, 2009, the Plaintiff filed timely objections to the R&R.

## STANDARD OF REVIEW

### I.    The Magistrate Judge's R&R

The Court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portion of the R&R to which the objection is made and the basis for the objection. Id.



## II.   Legal Standard for Summary Judgment

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr. Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational tried of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." Celotex, 477 U.S. at 327.

## DISCUSSION

### I.   Fourth Amendment Claim

In the R&R, the Magistrate Judge first concluded that the Plaintiff's Fourth Amendment claim challenging the search and seizure of his property was barred by Heck v. Humphrey, 512 U.S. 477. In Heck, the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness

7

> would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been invalidated is not cognizable under § 1983. Thus, when a when a state prisoner seeks damages in an § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 487 (emphasis in original). The critical question, therefore, is "whether a judgment in favor of the plaintiff would *necessarily* imply the invalidity of his conviction or sentence."

Id. To explain the meaning of "necessarily," the Supreme Court stated in footnote 7:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but [also] that it caused him actual, compensable injury, which, we hold today, does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

Id. at 487, n.7 (citations omitted).

In Ballenger v. Owens, the Fourth Circuit Court of Appeals examined footnote 7 and determined that the "hypothesis presented in footnote 7 does not provide a blanket protection for all § 1983 damage suits alleging an unreasonable search." 352 F.3d 842, 846 (4th Cir. 2003). The Fourth Circuit stated:

> When evidence derived from an illegal search would have to be suppressed in a criminal case if the judgment in the § 1983 claim were to be applied to

8

> the criminal case and the suppression would necessarily invalidate the criminal conviction, the stated principle of Heck would apply, and the § 1983 claim would have to be dismissed; there would be no cause of action under § 1983. It is only when the suppression of the evidence required by logical application of the § 1983 judgment would not *necessarily* invalidate the underlying conviction that the § 1983 case can proceed.

Id. Ultimately, "[a] district court must undertake a case specific analysis to determine whether success on the claims would necessarily imply the invalidity of a conviction or sentence." Thigpen v. McDonnell, 273 F.App'x 271 (4th Cir. 2008) (unpublished) (citations omitted).

Here, as the Magistrate Judge noted, it is undisputed that the Plaintiff was convicted of two counts of possession of stolen property and one count of possession of a stolen vehicle. Also, it is undisputed that the Plaintiff was found in possession of the stolen property and vehicle as a result of the contested search. Thus, the Magistrate Judge concluded that the "suppression of the evidence seized pursuant to the challenged search would necessarily imply invalidity of the criminal conviction because the doctrines of independent source, inevitable discovery, harmless error, and similar doctrines would not save the plaintiff's criminal conviction." Id. In other words, "the property seized was uniquely available from the alleged illegal search," and therefore, the Magistrate Judge concluded that the Plaintiff's § 1983 claim is in fact an unexhausted habeas corpus claim attacking his conviction. Id. And because the Plaintiff has not produced evidence showing that his conviction has somehow been reversed, overturned, or called into question, the Magistrate Judge determined that his claim is not cognizable under § 1983.[4]

---



[4] Additionally, the Magistrate Judge determined that even if a judgment in favor of the Plaintiff would not necessarily imply the invalidity of his conviction, the Plaintiff still may not recover because he has not shown that the search was unlawful or that it created

In his objections to the R&R, the Plaintiff asserts that the Magistrate Judge's reliance upon Heck is misplaced. First, the Plaintiff attempts to separate the items seized by the Defendants into "non-stolen goods" and "stolen goods." With respect to the former category, the Plaintiff asserts that the Defendants seized certain "non-stolen" items, including cash, gold, vehicles, legal papers, gold mining equipment, and clothes. The Plaintiff contends that the warrants did not authorize the seizure of these items and that these items were not used in any criminal prosecution. Because the Defendants never offered or introduced these allegedly "non-stolen" items, the Plaintiff contends that a decision in his favor would not invalidate his criminal conviction. (Obj. at 7-8.)

Next, the Plaintiff asserts that certain "stolen goods" were unlawfully searched and seized. He claims, however, that he "has never sought to have the items suppressed[5] and has never asked to have the items returned." (Obj. at 9.) Rather, the Plaintiff admits that

---

actual, compensable injury (which does not encompass the injury of being convicted and imprisoned). While the Court is inclined to agree with the Magistrate Judge that the Plaintiff has not shown that the search was unlawful, in light of the Plaintiff's repeated requests for compensable damages based on the loss of his property as well as damages based on harm caused to his reputation, the Court recognizes that the Plaintiff has at the very least *alleged* an actual or compensable injury.

[5] In contrast, the Defendants assert that the Plaintiff did ask the trial judge to declare the warrants and the search invalid but that the trial judge denied the Plaintiff's request. In fact, in their motion for summary judgment, the Defendants assert that the doctrine of *res judicata* bars the Plaintiff's challenge to the search and seizure. This is so, according to the Defendants, because the trial court denied the Plaintiff's request to declare the search and the warrants invalid.

Here, however, the record before the Court is insufficient for the Court to find that the doctrine of *res judicata* bars the Plaintiff's claim, as the record does not contain any portion of the trial record or any other evidence of what the trial judge actually found with regard to the challenged search and seizure (aside from the Plaintiff's and the Defendants' contradictory statements). Thus, the Court "decline[s] to pursue, without implying the nonexistence of," the Defendants' argument that the Plaintiff's claim is barred by the doctrine of *res judicata*. See Heck, 512 U.S. at 480, n.2.

these items were stolen and asserts that he had no lawful right to their return. (Obj. at 10.) The Plaintiff further asserts that he purposefully did not seek suppression of the stolen goods as a trial strategy. He states: "As a trial strategy, Plaintiff wanted the evidence to be introduced in the state criminal trial and even if the evidence had been suppressed, Plaintiff would have introduced the same evidence himself because he believed the evidence would actually exonerate him of the criminal charges." (Obj. at 10.) Apparently, the Plaintiff believed that he could not be found guilty of possessing stolen goods because under South Carolina law, "where a larceny has been committed, the principal thief, that is, the one who is guilty of the actual caption and asportation, cannot be adjudged guilty of criminally receiving the thing stolen for the reason that he cannot receive from himself." State v. McNeil, 314 S.C. 473, 475, 445 S.E.2d 461, 462 (Ct. App. 1994) (quoting State v. Hamilton, 172 S.C. 453, 455, 174 S.E.2d 396, 397 (1934)). The Plaintiff further states: "By failing to object to the introduction of the evidence in the state trial, the evidence was lawfully introduced regardless of its unlawful seizure, and Plaintiff waived his remedy of exclusion. However, Plaintiff has not waived his right to seek damages for the unlawful search[,] which remedy that could not have been obtained in the state criminal trial." (Obj. at 12.) In other words, the Plaintiff asserts that because he is not seeking suppression of the evidence (but instead is seeking damages for the unlawful search), a judgment in his favor would not necessarily imply the invalidity of his conviction.

After review, the Court recognizes the unusual facts before it and admits that the Plaintiff has made some facially convincing arguments. Nevertheless, further consideration leads the Court back to Ballenger, where the Fourth Circuit interpreted footnote 7 in Heck and stated: "When evidence derived from an illegal search **would have to be suppressed**



11

in a criminal case **if the judgment in the § 1983 claim were to be applied to the criminal case** <u>and</u> **the suppression would necessarily invalidate the criminal conviction,** the stated principle of Heck would apply, and the § 1983 claim would have to be dismissed." 352 F.3d at 846 (emphasis added).

Here, if the Court were to grant the Plaintiff's § 1983 claim and find the search at issue invalid, <u>and</u> if the judgment finding the search invalid were applied to the Plaintiff's criminal case, there is no doubt that the evidence derived from the illegal search would have to be suppressed (regardless of whether the Plaintiff actually moved to suppress the evidence at his trial). The next question, then, is whether the suppression would necessarily invalidate the Plaintiff's criminal convictions. Here, the Plaintiff has advanced no circumstances, nor can the Court conceive of any, to suggest how the State could convict him of possession of stolen property and possession of a stolen vehicle if the stolen property and the stolen vehicle were suppressed. After all, it was the possession of the stolen property and the stolen vehicle that constituted the Plaintiff's offenses, and if that evidence was to be suppressed by reason of the illegality of the search, the Court does not see how his convictions could be salvaged. Therefore, the Court agrees with the Magistrate Judge that the Plaintiff's Fourth Amendment Claim challenging the search and seizure of his property is barred by <u>Heck</u>.



II.    **Meaningful Access to Courts**

In his complaint, the Plaintiff next asserts that the Defendants violated his constitutional right of meaningful access to the courts by failing to provide him with a law library or persons trained in the law while he was detained at the Oconee County Detention

Center pending trial. The Defendants concede that the Oconee County Detention Center does not have a law library. This is so, according to the Defendants, due to a lack of funds and because the facility only houses pre-trial detainees and inmates sentenced to 90 days or less. The Defendants also assert that although inmates are restricted in the materials that they may have, legal materials and photocopied cases are not prohibited.

In the R&R, the Magistrate Judge recommends that the Court grant summary judgment in favor of the Defendants with respect to this claim. Essentially, the Magistrate Judge determined that the Defendants had not violated the Plaintiff's right of access to the courts, specifically noting that the Plaintiff was a pre-trial detainee being held temporarily in a local detention facility. The Magistrate Judge further determined that the Plaintiff failed to identify any specific injury or indicate what other kinds of actions he may have filed. Moreover, the Magistrate Judge noted that the Plaintiff's "pleadings in this case have been substantially competent." (R&R at 10.) In his objections to the R&R, the Plaintiff asserts that he was denied total access to a law library for seven months while he was awaiting trial, and he asserts that he was injured because he was forced to stand trial without any research materials.

In Bounds v. Smith, the United States Supreme Court addressed the issue of "whether States must protect the right of prisoners to access to the courts by providing them with law libraries or alternative sources of legal knowledge." 430 U.S. 817, 817 (1977). The Court ultimately held that:

> the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

Id. at 828. Nevertheless, as the Fourth Circuit Court of Appeals stated in Strickler v. Waters, "Bounds did not hold that there is a right of access to a law library; it held that there is a right of access to the *courts*." 989 F.2d 1375, 1385 (4th Cir. 1993) (emphasis in original).

> In other words, Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

In Lewis, the Supreme Court also held that a prisoner must show some actual injury resulting from a denial of access to the courts in order to allege a constitutional violation. Id. at 349; see also Magee v. Waters, 810 F.2d 451, 452-53 (4th Cir. 1987) (stating that "courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"); Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996).

Moreover, "the Supreme Court has never directly addressed whether the right of access to courts applies at all to inmates in local jails." Strickler, 989 F.2d at 1385 (citing Williams v. Leeke, 584 F.2d 1336, 1344, n.1 (4th Cir. 1978) (Hall, J., concurring in part and dissenting in part) ("I would not impose *any* institutional duty upon jail facilities which are not primarily used for the long-term incarceration of persons who are otherwise without counsel."), *cert. denied*, 422 U.S. 911 (1979)) (remaining citations omitted). As the Fourth Circuit said in Strickler:

> A local facility need not provide the same resources, much less the same quality or extent of resources, as must a state facility, because the expectation is that its occupants will be confined there only briefly and that they will have access to more extensive resources upon arrival at a state correctional facility.

Id. at 1386; see also Magee, 810 F.2d at 452 ("In determining whether all inmates have adequate access to the courts, the district court need not consider those inmates whose confinement is of a very temporary nature or for the purposes of transfer to other institutions.") (quoting Cruz v. Hauck, 515 F.2d 322, 333 (5th Cir. 1975)).

In addition, and perhaps most importantly, it should be noted that Bounds did not involve inmates who were attempting to defend themselves against criminal charges and who, therefore, were entitled to counsel. As the Fourth Circuit held in United States v. Chatman:

> Bounds was concerned with the rights to equal protection and to access to the courts of prisoners who sought to invoke post-conviction relief. . . . Bounds, of course, has no direct application to defendant. He was accused of a crime and had absolute right to counsel, which he validly waived; he had no present thought of pursuing post-conviction relief. But, even so, we do not read Bounds to give an option to the Prisoner as to the forum in which he elects to obtain legal assistance. The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take. Thus, to the extent that it may be said that Bounds has any application to the instant case, the United States satisfied its obligation under the sixth amendment when it offered defendant the assistance of counsel which he declined. We so hold.

584 F.2d 1358, 1360 (4th Cir. 1978); see also Kane v. Garcia Espitia, 546 U.S. 9, 10 (2005) ("Faretta says nothing about any specific legal aid that the State owes a *pro se* criminal defendant."). Based on this authority, it appears that the Sixth Amendment right to defend oneself does not include the right to access to an adequate law library when the defendant has waived his right to counsel, as is the case here. Therefore, the Court

15

finds that Bounds has no application to the Plaintiff's complaints about his inability to research his criminal case.

Moreover, to the extent that the Plaintiff challenges his inability to file other actions while he was being held, he does not identify any actions he wished to file, point to any specific issue he wished to research, or allege any specific injury he suffered other than his proceeding at trial without counsel and without research materials.[6] And as the Magistrate Judge noted, the right to a law library is not absolute. Here, although the Plaintiff was held without access to a law library for longer than 90 days, he was being held in a local detention center pending trial, and he had waived his right to have counsel represent him on his criminal charges. Furthermore, to the extent the Plaintiff claims that he was hindered in the present case, a review of the Plaintiff's various pleadings (including his three typed, multi-paged amended complaints) indicates that they are "substantially competent" and contain adequate case citations. Thus, he cannot claim that he has been left "wholly without resources" to prosecute potentially valid habeas claims or claims challenging the conditions of his confinement.

Based on the facts as set forth herein, the Court does not believe that the Plaintiff has been denied any constitutional right to access to the courts within the meaning of Bounds. 430 U.S. 817. Therefore, the Court finds that the Defendants are entitled to

---

[6] The Plaintiff alleges that he was forced to proceed *pro se* in a magistrate matter, which apparently involved an automobile accident that occurred in 2008. To the extent he complains about his lack of access to a law library with respect to this magistrate matter, the Plaintiff does not point to any issues that he needed to research or any specific injury he suffered as a result of not having access to a law library. More importantly, however, the Plaintiff was being held at the detention center due to his criminal charges and *not* due to this magistrate matter, which has no relation to the Plaintiff's criminal charges.

summary judgment on this claim.

## CONCLUSION

Based on the foregoing, the Court adopts the R&R to the extent that it is consistent with this Order, and it is

**ORDERED** that the Plaintiff's motion for summary judgment (Entry #33) is **denied** and the Defendants' motion for summary judgment (Entry #39) is **granted**.

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

March 23, 2009
Charleston, South Carolina

#17