IN THE UNITED SATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

RECEIVED
USDC. CLERK. CHARLESTON. SC

2010 AUG 18 P 12: 20

| | |
|---|---|
| James D. Tinsley, II, #171943, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>James Singleton, Greg Reed, David )<br>Smith, Steve Pruitt, Phyllis Lombard, )<br>County of Oconee, Scott Arnold, Jerry )<br>Moss, Mark Lyles, Mike McGowan, and )<br>Gentry Hawk, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 8:08-CV-532-SB<br><br>**ORDER** |

This matter is before the Court upon the Plaintiff's motion to reconsider the Court's previous order granting the Defendants' motion for summary judgment and denying his motion for summary judgment. After appointing counsel for the Plaintiff, the Court held a hearing on his motion on Tuesday, August 10, 2010. For the reasons set forth at the hearing and for those set forth herein, the Court grants the Plaintiff's motion and enters this order amending and clarifying its previous order.

## BACKGROUND

On July 31, 2008, a jury convicted the Plaintiff of two counts of possession of stolen property and one count of possession of a stolen vehicle. He is now in the custody of the South Carolina Department of Corrections, but at the times relevant to this complaint, he was a pre-trial detainee incarcerated at the Oconee County Detention Center ("OCDC").

### I. Procedural Background

The Plaintiff filed this action on February 13, 2008, naming as Defendants: James



Singleton, the Sheriff of the Oconee County Sheriff's Department; Greg Reed, a detective with the Sheriff's Department; David Smith, another detective in Oconee County; Phyllis Lombard, an Oconee County Administrator; Steve Pruitt, a Major at the Oconee County Detention Center; Judge B.A. Norton, an Oconee County magistrate judge; various John and Jane Does; and the County of Oconee.[1] After filing his initial complaint, the Plaintiff filed an amended complaint, a second amended complaint, and a third amended complaint. In his third amended complaint, the Plaintiff identified the following John Doe Defendants: Jerry Moss, Mark Lyles, Mike McGowan, and Gentry Hawk (all of whom work for the Oconee County Sheriff's Department).

In this action, the Plaintiff alleges that the Defendants violated his constitutional rights by unreasonably seizing his property without a warrant, exigent circumstances, due process of law, or his consent. He also alleges that the Defendants violated his constitutional right of access to the courts by failing to provide him with a law library or person trained in the law while he was detained at the OCDC.

On June 23, 2008, the Plaintiff filed a motion for summary judgment, and on August 1, 2008, the Defendants filed a cross-motion for summary judgment. On January 15, 2009, the Magistrate Judge issued an R&R, recommending that the Court deny the Plaintiff's motion for summary judgment and grant the Defendants' motion for summary judgment. Specifically, the Magistrate Judge determined that the Plaintiff's claim challenging the search and seizure of his property was barred by the United States Supreme Court's decision in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). The Magistrate Judge also

---

[1] In an order filed March 20, 2008, the Court adopted the Magistrate Judge's R&R and dismissed the complaint as to Defendant Norton.



2

determined that the Plaintiff had not been denied meaningful access to the courts. On January 28, 2009, the Plaintiff filed timely objections to the R&R.

After considering the R&R and the Plaintiff's objections, as well as the record as a whole, the Court entered an order adopting the R&R and finding that Heck barred the Plaintiff's claim challenging the search and seizure of his property. The Court also found that the Plaintiff had not been denied any meaningful access to the courts.

The Plaintiff filed a timely motion to reconsider, asserting that the Court misunderstood the facts and his claims and that the Court misapplied the law. The Plaintiff also filed a motion to appoint counsel. The Defendants opposed both of the Plaintiff's motions, but on October 28, 2009, the Court entered an order granting the Plaintiff's motion to appoint counsel, noting that it wanted to be sure that it correctly understood and considered the Plaintiff's claims. The Court asked the parties to file supplemental briefs prior to the hearing.

## II. Factual Background

According to the third amended complaint, the Plaintiff was invited to stay at a camper owned by Hogan Hugh Justice, III ("Justice") on December 11, 2007. At the time, the camper was connected to utilities and being used as a residence, and it was located on fenced, private property owned by the Lost Dutchman's Mining Association ("LDMA") in Tamassee, South Carolina. The Plaintiff alleges that he is a member of LDMA, but he claims that he did not have control over any property owned by Justice, including the camper, a backhoe, a trailer, two all-terrain vehicles ("ATVs"), and a Ford Ranger truck.

The Plaintiff alleges that on or about January 1, 2008, Justice asked him to try to sell some ATVs for him on eBay, and he agreed to list them in exchange for $50.00 plus



3

eBay fees for each ATV sold. The Plaintiff admits that at some point in January, the Oconee County Sheriff's Department began investigating the theft of several ATVs that were being sold locally on eBay, and the Defendants suspected that the Plaintiff may have been involved and obtained a warrant for his arrest. On January 29, 2008, at 1:00 p.m., the Plaintiff, Justice, and Clyde Bowles ("Bowles") were driving down Highway 11 near Tamassee, South Carolina, when they were pulled over by Defendant Smith. As a result of the stop, the Plaintiff and Justice were arrested. According to the Plaintiff, Defendants Reed, Arnold, Moss, Lyles, McGowan, and Hawk arrived at the arrest site and participated in inventorying the Plaintiff's 1999 Ford Expedition. During questioning, the Plaintiff admitted that a computer, which was inside a briefcase in his car, belonged to him. The Defendants ultimately had the Plaintiff's car towed to an impound lot and took the Plaintiff to the Oconee County Detention Center.

Next, the Plaintiff alleges that the Defendants questioned Bowles about his knowledge of the ATVs, and Bowles informed the Defendants that he had seen two ATVs at the LDMA property ("the campsite" or "the campground")and that one was in the yard and the other was in an olive enclosed trailer. The Plaintiff alleges that the Defendants took his keys and went to the campground to see if the ATVs were there and to determine if they were stolen. According to the Plaintiff, the Defendants, without a search warrant, moved one ATV into the yard so they could get under it and see the vehicle identification number on the bottom of the frame. The Plaintiff also alleges that the Defendants, without a search warrant, entered a locked trailer to locate the second ATV and that they entered an enclosed backhoe and a camper to determine whether they had been stolen. According to the Plaintiff, Defendant Smith left the property in the hands of the other

4



Defendants to go obtain a warrant to search and seize the property after conducting the alleged unconstitutional pre-warrant search. The Plaintiff complains that the resulting warrant and affidavit were insufficient, and he complains that the warrant did not cover certain items that were searched and seized.

In contrast, according to the Defendants, the Iredell County Sheriff's Office contacted them in January of 2008 regarding stolen property believed to be in the Plaintiff's possession. Specifically, the Iredell County Sheriff's Office advised the Defendants that the Plaintiff had sold a stolen ATV on eBay. The man who purchased the stolen ATV from the Plaintiff had picked it up at a storage unit rented by the Plaintiff in Oconee County. Also, the Haywood County Sheriff's Office contacted the Defendants about several four-wheelers and a long, black, enclosed trailer that had been stolen in Haywood County.

According to the Defendants, on January 29, 2008, the owner of the storage unit contacted them and advised them that the Plaintiff had been there. The owner told the Defendants that the Plaintiff was last seen driving south on Highway 11. The Defendants located the Plaintiff on Highway 11 and pulled him over, resulting in the arrest of the Plaintiff and Justice. A passenger in the car, Bowles, then directed the officers to the campsite where the Plaintiff had been staying with Justice. According to the Defendants, they saw stolen ATVs and trailers in plain view at the campground.[2] Based on information

---

[2] The Defendants allege that the stolen vehicles were in plain view; however, at his state trial, Defendant Smith testified that the officers actually entered the campground and looked at the stickers on the vehicles. Smith testified:

> In talking to Mr. Bo[w]les, he told me they were staying at a campsite not far away from where they was at or where we were stopped at, and that he would show us where it was at. I asked him if he seen any ATV's or trailers because Haywood County was missing ATV's and trailers. He said there



5

obtained in their investigation, the Defendants obtained a search warrant for:

> any and all items of evidentiary value including [ ] Polaris Sportsman four wheelers, Superior trailers, and a[n] olive in color [e]nclosed trailer with a black fold down door with side door with dual wheels, Deere backhoe tractor yellow in color, 8' black trailer, VRI camper white in color with two slide out[s] and two doors with [a]wning on it.

(Entry 41-3 at 2.) Next, the Defendants obtained a second search warrant to look for:

> papers to show sale or buying of property, calendars, phone numbers, any paperwork showing bookkeeping and/or records of sale, tools, computer equipment, removable hardware used for computer storage space, any removable hard drives to include flash drives and external hard drives, the internal memory of the hard drive and any other computer sto[r]age space, including external memory of the hard drive and any other computer storage space, including external hard drives and other memory storage space.

(Entry 41-4 at 2.) The Defendants seized property from the campground, and they assert

---

> was some trailers out there and ATV's. So he said he would show us where it was at. So we went up to this location off of, up in the Tamassee area at the foot of the mountain. And once we arrived, there's like a little camping area, his camper was on the end down there. And we pulled in.   Mr. Bo[w]les was staying with Mr. Tinsley and Justice and he had some. . . .
>
> I went off and looked at the trailer in plain view. On the tag, that actual tag came back stolen out of Haywood County from this Polaris dealership. On the six-by-six in plain view on the sticker, just under the thing, there was – you didn't have to move nothing, you could see it – ran it and it came back stolen out of Haywood County, the Polaris same Polaris place up there. So from there I told the officers to hold off. I was going back to get a search warrant and come back.

(Entry 86-3 at 8-9.) The parties dispute whether Bowles had authority to bring the officers on the campground; however, this issue is not appropriate for the Court to consider. Stated simply, as the Court held in its previous order, if the Court were to find the entire search of the campground invalid (based on the alleged unconstitutional pre-warrant search), then all of the evidence derived from the illegal search would have to be suppressed, implying the invalidity of the Plaintiff's conviction (insofar as the conviction rested upon items seized from the campground). For the Plaintiff to raise this issue before this Court, he would need to produce evidence showing that his conviction has somehow been reversed, overturned, or called into question. See Heck, 512 U.S. 477.

6



that the searches and seizures were lawful and done pursuant to valid warrants. The Defendants also maintain that the Plaintiff has not been denied meaningful access to the courts.

## DISCUSSION

**I.     The Plaintiff's Fourth Amendment Claim**

After consideration, the Court finds that it failed to consider both aspects of the Plaintiff's Fourth Amendment claim. Specifically, based on the Plaintiff's motion to reconsider and the parties' supplemental briefs, it appears that the Court erred in considering the Plaintiff's claim solely as an across-the-board challenge to the search of the campground based on the alleged unconstitutional pre-warrant search of the campground. (See Entry 52 at 2 ("The Plaintiff contends this pre-warrant search violated his privacy rights and he would never have been arrested nor incarcerated had it not been for this unlawful search."); Entry 56 at 4-5 ("Here however, police were on privately posted property, and were 3/4 of a mile down a dirt driveway in the woods, and were trespassing in order to view the items. . . . [T]he police['s] initial entry and search put them in a place they were not lawfully authorized to be.").) In other words, because the Plaintiff alleged that the officers violated his rights by entering the campground (which was marked as private property) prior to obtaining a warrant and without consent or authority, the Court construed the Plaintiff's complaint as a blanket challenge to the subsequent search of (and seizures from) the campground. And as set forth in footnote 2, if the Court were to find the entire post-warrant search of the campground unconstitutional based on the alleged unconstitutional pre-warrant search, then all of the evidence derived from the search would



7

have to be suppressed, implying the invalidity of the Plaintiff's conviction (insofar as the conviction rested upon items seized from the campground). Thus, the Court believes it correctly granted summary judgment in favor of the Defendants on the Plaintiff's across-the-board challenge to the search of the campground ("the Plaintiff's <u>Heck</u> claims").[3]

However, the Court should not have ended its inquiry here; rather, the Court needed to consider the other aspect of the Plaintiff's claim, namely, that the Defendants violated his rights by seizing and retaining personal items not described with particularity in the warrant (regardless of the warrant's validity) and items that were not relevant to his conviction ("non-<u>Heck</u> claims"). The items allegedly seized and retained without authority fall into the two categories set forth below.

### A. Items Admittedly Seized and Returned Following the Plaintiff's Trial

First, the Plaintiff contends that the Defendants did not have probable cause to seize his Land Rover and that it was not particularly described in the warrant. Apparently, the Defendants removed the Land Rover, which was not stolen or part of his criminal case, from the campsite and retained it for several months before returning it to the Plaintiff. According to a property release form submitted by the Defendants, they released the Land Rover to the Plaintiff's father on August 7, 2008. (Entry 88-2.)

Likewise, the Plaintiff objects to the Defendants' seizure of his Ford Expedition (the vehicle he was driving at the time he was arrested). The Plaintiff admits that the Defendants had the right to remove his Expedition from the side of the road, but he asserts

---

[3] In granting summary judgment in favor of the Defendants on the Plaintiff's <u>Heck</u> claims, the Court notes that it does so without prejudice to the Plaintiff's right to bring these claims again should he be successful on his direct appeal.



8

that the Defendants did not have the right to retain the vehicle, which was not stolen or part of his criminal case, in the impound lot for several months. Along with the Land Rover, the Defendants released the Expedition to the Plaintiff's father on August 7, 2008. (Entry 88-2.)

Next, the Plaintiff objects to the Defendants' seizure of other personal items that he asserts were not stolen and did not form the basis of his conviction.[4] Although Defendant Smith originally asserted in his affidavit that "no other property belonging to Tinsley was seized" except for the property listed in the return,[5] he provided a supplemental affidavit

---

[4] In his affidavit dated June 11, 2008, the Plaintiff asserts that the Defendants seized the following personal items without authority and retained them without justification:

> 62 one-ounce bottles of gold at that time valued at $930.00 per ounce totaling $58,660.00; $29,000 in cash; Minelab metal detector valued at $3,950.00; Honcoop highbacker with Honda motor and hoses valued at $2,350.00; Exorcist gold machine valued at $1,250.00; Fugi digital camera valued at $400.00; laptop computer valued at $1,550.00; diving outfit with drysuit, mask, gloves, boots, and snorkel valued at $2,550.00; camo waders, insulated valued at $279.00; tools valued at $500.00; new 3/4 drill, jigsaw, orbital sander, and various handtools valued at $1000.00; long black coat valued at $400.00; green Carhart coat valued at $150.00; grey sports coat valued at $100.00; camo coat valued at $60.00; two pairs of black jeans valued at $60.00; one pair of khaki pants valued at $30.00; numerous long sleeve, short sleeve dress shirts, t-shirts, and sleeping clothes valued at $450.00; approximately 20 pairs of underwear and 20 pairs of socks valued at $70.00; a green garden wagon valued at $160.00; 2 pairs of shelves valued at $400.00; 1 wire shelf valued at $50.00; an outdoor grill valued at $400.00; other tools, pumps, hoses, chainsaw, rubber boots and suits, valued at over $1,500.00; numerous canned goods and food, drinks, pots and pans valued at over $500.00; government property titles valued at $100.00; one pair of Caribou boots valued at $200.00; grandmothers heater valued at $60.00; and grandmothers hair dryer valued at $30.00.

(Entry 87-6 at 10-11.)

[5] The following property was listed in the return from the search on January 29, 2008:



9

admitting that "[t]here were various items contained in the camper and trailers which were in our possession, but were not specifically listed on the Return."[6] (Cf. Entry 39-3 at 3 and

---

>Black trailer/wood floor superior serial #4M85081125D002
>Hon Coop High Banker phone #(888-988-2122)
>Northstar semi trash pump #GCAHK-1054645
>Themos grill
>Superior Trailer #45AN537594M283354
>Polaris 700 Ranger 6x6 #4XaRF68A984407283
>Deere yellow in color backhoe 310G 419260-Mod MS 2025
>VRI Keystone Camper #4JDT2287664160585
>Polaris Sportsman 500 HDx2 4 wheeler
>Carry on cargo Trailer olive in color #4ymcc17267H280562
>Springfiled 45 automatic pistol serial # US721050W/ Box 45 cal. bullets
>Finepix 5700 digital camera Fuji Film #7W428021 in case (black)

(Entry 39-4 at 7.) Notably, it does not appear that the Plaintiff's Land Rover, Expedition, or certain other personal items were listed in a return.

[6] At the Plaintiff's trial, Smith admitted taking and retaining some of the Plaintiff's personal items for safekeeping. The Plaintiff questioned Smith as follows:

>Q  Detective, are you being sued by me in federal court?
>A  Yes, sir.
>Q  And I have alleged that you seized my personal property outside the scope of the warrant?
>A  You have.
>Q  Did you seize my Land Rover, Discovery?
>A  It's been towed to the sheriff's impound lot.
>Q  You have possession of it?
>A  It's there. Yes, sir.
>Q  You have a warrant authorized to take that?
>A  Couldn't leave it on the property there, so we towed it to the sheriff's impound lot for safekeeping. Yes, sir.
>Q  Have you released it?
>A  No, sir. Nobody has asked for it to be released.
>Q  What about my clothes, papers, and personal effects, things of that nature? Have you seized those items?
>A  We had to take those out of the camper because the camper was stolen. They're at the sheriff's lot up there, packaged.
>Q  Do you have a warrant authorizing the taking of those items?
>A  The property was stolen, so we had to put it in –
>Q  My clothes and underwear?



Entry 88 at 1.) Defendant Smith asserts that he released the property to the Plaintiff's father after David Wagner at the Solicitor's Office told him he could do so. Indeed, the property release forms provided by the Defendants indicate that, following the conclusion of the Plaintiff's trial, the Defendants released to the Plaintiff's father many of the items alleged to have been taken unconstitutionally. These items were released to the Plaintiff's father approximately six months after the Plaintiff filed this suit requesting the return of the items and approximately four months after the Plaintiff filed a grievance form seeking the return of the items.[7]

With respect to the items admittedly seized and returned to the Plaintiff after his trial, the Court believes that more evidence is required before the Court can determine whether the seizure and retention of these items violated the Plaintiff's constitutional rights. First, although the personal property at issue was not listed with particularity in any warrant and was not included in any return, the circumstances of this case are unique in that the

---

. . .
A    Your clothing and all that is locked up. Yes, sir. We had to put it somewhere.
Q    But none of my personal items were stolen. My Land Rover Discovery, wasn't stolen, underwear, none of that stuff stolen, right?
A    Not that I'm aware of.

(Entry 86-3 at 15-16.)

[7] The Plaintiff's father also asserts in an affidavit provided by the Plaintiff that he met with Defendant Smith on January 30, 2008, and inquired about retrieving the Plaintiff's personal property, including the Land Rover, the Expedition, and the Plaintiff's dog. According to the Plaintiff's father, Defendant Smith told him that the two vehicles were not related to the Plaintiff's charges but that the officers thought they may have been purchased with money obtained from the sale of stolen goods. (Entry 87-3.) In contrast, in Defendant Smith's supplemental affidavit, he states that he does not recall the Plaintiff's father asking for any property on that day or any other. (Entry 88 at 3.)

11



personal property at issue (aside from the LandRover and the Expedition) was contained within vehicles that were seized pursuant to a warrant, and the vehicles were removed from a campground where the Plaintiff was staying with a friend. Stated simply, the Court does not think it would have been appropriate for the Defendants to have removed all of the Plaintiff's personal property prior to seizing the vehicles and to have left it outside, unprotected at the campground.[8] Moreover, because the camper that contained much of the property at issue was found to have been stolen and was returned to its rightful owner, it is clear that the Plaintiff's personal property needed to be removed from the camper and placed somewhere for safekeeping. However, what is not clear is whether the Defendants removed (or impounded) the Plaintiff's personal property, inventoried it, and stored it pursuant to a valid policy of the Sheriff's Office or the Solicitor's Office. Moreover, what is not clear, either legally or factually, is whether the Defendants needed to return the property to the Plaintiff (or his father) immediately once the Plaintiff requested its return or whether the Defendants had the right to hold the property until the conclusion of the Plaintiff's trial. For these reasons, the Court believes that it would be premature to grant summary judgment with respect to the items admittedly seized and later returned to the Plaintiff. And as indicated at the hearing, the Court will permit the parties to reopen discovery to the extent that it may be necessary to resolve these issues, and the Court will welcome any further briefing on both the facts and the law relevant to these issues.[9]

---

[8] Likewise, the Plaintiff and Justice were in custody, and there is nothing in the record to indicate that the Defendants should have left the Plaintiff's personal property under the care of Bowles or someone else at the campground.

[9] Again, the Court wishes to express its sincere gratitude to all of the attorneys in this case, and particularly to the Plaintiff's appointed counsel, who have accepted this case

12



### A. Items Not Admittedly Seized or Items Not Returned to the Plaintiff

The Plaintiff contends that the Defendants seized and have not returned the following items: (1) 62 one-ounce bottles of gold; (2) $29,000.00 in cash; (3) a gold mining machine (the Gold Exorcist); (4) a MineLab metal detector; (5) camo waders; and (6) a gold shaker separation table. In contrast, in his supplemental affidavit, Defendant Smith asserts that the Defendants did not find or seize any gold or cash from the campground. (Entry 88 at 3.) Smith also asserts that the Defendants never seized or possessed an Exorcist gold machine or Minelab metal detector. ( Id.) It is not clear from the record whether the Defendants admit seizing the camo waders or the gold shaker separation table.

Ultimately, based on the evidence in the record and for the reasons set forth at the hearing, the Court believes that genuine issues of material fact for a jury to decide exist as to those items that the Plaintiff alleges were seized but that the Defendants deny seizing. Accordingly, the Court denies both parties' motions for summary judgment with respect to these claims.

### II. Meaningful Access to the Courts

In his supplemental memorandum and at the hearing on this issue, the Plaintiff asserted that he is not arguing his access to courts claim as part of his motion to reconsider. Nevertheless, because the Plaintiff initially raised the issue in his motion to reconsider, the Court notes the following for purposes of the record. First, with respect to

---

pro bono and who have provided invaluable assistance. It is evident that all of the attorneys in this case have worked diligently, and although there is more work to be done, the Court will keep in mind the unique circumstances of this case will aim to accommodate everyone's undoubtedly full schedule.



the Plaintiff's claim that the Court assumed facts not in the record by finding that the Plaintiff waived his right to the assistance of counsel on his state criminal charges, it appears that the Plaintiff is correct as nothing in the record (at that time) proved that the Plaintiff was actually offered the assistance of court-appointed counsel to represent him on his state criminal charges. However, the Defendants have since submitted portions of the trial transcript indicating that the Plaintiff chose to represent himself and that he was appointed a public defender who eventually was relieved as counsel. Despite this, the Plaintiff contends that his right of meaningful access to the courts was violated because he was not offered the assistance of standby or hybrid counsel to help him in representing himself.[10] After review, the Court finds the Plaintiff's claim to be wholly without merit. See United States v. Singleton, 107 F.3d 1091, 1096 (4th Cir. 1997) (finding no constitutional right to advisory counsel or hybrid representation after a defendant waives his Sixth Amendment right to counsel and elects to represent himself); United States v. Ruhbayan, No. 09-4239, 2010 WL 893487, *2 (4th Cir. March 12, 2010) (citing Singleton and stating that "a defendant who wishes to proceed pro se does not have a right under Faretta to the assistance of an attorney as standby counsel or co-counsel"). Moreover, to raise this arguments in the context of a section 1983 action, prior to obtaining relief on direct appeal or through the means of a post-conviction relief application and/or petition for

---

[10] For instance, in one of his affidavits, the Plaintiff asserts that he filed a motion seeking to represent himself with the assistance of stand-by counsel or some other legal assistant but that the state court denied his motion. (Entry 56-2 at 4.) The Plaintiff also asserts in his reply to the Defendants' response to his motion to reconsider that he "wish[ed] to present his defense to the jury but sought stand-by counsel to assist him with conducting legal research or access to a law library to conduct his own research" and that he "was offered neither." (Entry 68 at 7.)



14

habeas corpus, the Court believes, is improper. Therefore, the Court affirms its original finding that the Defendants are entitled to summary judgment on the Plaintiff's access to courts claim.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth at the hearing on August 10, 2010, the Court grants the Plaintiff's motion to reconsider (Entry 56) as indicated herein. Specifically, the Court affirms its grant of summary judgment in favor of the Defendant on the Plaintiff's Heck claims; however, the Court notes that its grant of summary judgment is without prejudice to the Plaintiff's right to bring these claims again should he be successful on his direct appeal. Next, the Court denies summary judgment in favor of either party on the Plaintiff's non-Heck claims. Finally, the Court affirms its grant of summary judgment in favor of the Defendants with respect to the Plaintiff's access to courts claim.

**AND IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

August **17**, 2010
Charleston, South Carolina



15